UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

THOMAS JOSEPH ZIMMER, V
and THOMAS JOSEPH ZIMMER, VI,
a minor by and through his mother and

next best friend, VALREE L. CONNELL,

    Plaintiffs,

vs.

PRISON HEALTH SERVICES, INC.
and LARRY A. BAKER, D.O.,

    Defendants.
_____/

CASE NO.: 1:04CV29SPM

Lower Case No: 01-02-CA-2659

## REVISED AMENDED COMPLAINT

The Plaintiffs, Thomas Joseph Zimmer, V, and Thomas Joseph Zimmer, VI, a minor, by and through his mother and next best friend Valerie L. Connell, by and through their undersigned attorneys, hereby sue the Defendants, Prison Health Services, Inc. and Larry A. Baker, D.O., and allege as follows:

GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

1.    This is an action for damages being brought pursuant to Chapters 766 and

1

768, Florida Statutes, and Fla.R.Civ.P. 1.650, for damages exceeding Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

2. Plaintiffs have complied with all prerequisites of Florida Statute 766.106, et seq., and Fla.R.Civ.P. 1.650.

3. Plaintiff, Thomas Joseph Zimmer, V, was at all times material hereto a resident of Alachua County, Florida.

4. Plaintiff, Thomas Joseph Zimmer, VI, is the minor son of plaintiff, Thomas Joseph Zimmer, V, and was at all times material hereto a resident of Alachua County, Florida.

5. At all times material hereto, the Defendant, Prison Health Services, Inc. (hereinafter referred to as "PHS") was organized under the laws of the state of Tennessee and was authorized to do business and transact business in the state of Florida.

6. PHS holds itself out as a health care provider having the facilities, competence, staff, and trained personnel to properly examine, diagnose, advise, monitor, and treat patients such as Thomas Joseph Zimmer, V.

7. At all times material hereto, the Defendant, PHS had the obligation to

provide for the reasonable delivery of medical, dental, and health care to any person remanded to the custody of the Alachua County Sheriff's Office Department of the Jail.

8. At all times material hereto, Prison Health Services, Inc. acted, by and through its employees, directors, and/or managing agents, including but not limited to its Medical Director, Larry A. Baker, D.O. and its nursing staff in the furtherance of PHS's business pursuits.

9. At all times material hereto, Larry A. Baker, D.O. was a physician licensed under the laws of the state of Florida, transacted his daily business in Alachua County, Florida, and served as PHS's medical director who oversees all medical aspects of the Alachua County Jail clinic and infirmary.

10. Dr. Baker held himself out as a physician qualified in the field of Family Practice possessing the same level of skill and expertise in the field of Family Practice as any other qualified family practice specialist in the Alachua County, Florida, or in any similar medical community.

## BASIS FOR CLAIMS

11. In the early evening hours on May 28, 2001, Plaintiff Thomas Joseph

3

Zimmer, V (hereinafter referred to as "Mr. Zimmer") sought medical assistance for alcohol rehabilitation treatment at Meridian Behavioral Health Care, Inc. in Gainesville, Florida. He was advised that there were no beds available and was referred to Alachua General Hospital in Gainesville, Florida.

12. Mr. Zimmer was transported to Alachua General Hospital by his minor son, Plaintiff Thomas Joseph Zimmer, VI, and his former wife.

13. Upon his arrival at Alachua General Hospital, Mr. Zimmer was evaluated and referred to the Alachua County Jail pursuant to hospital policy for Marchman Act placement pursuant to Chapter 397 of the Florida Statutes.

14. Mr. Zimmer was then transported to the Alachua County Jail by local law enforcement and was placed in the care, custody and control of the Sheriff of Alachua County pursuant to the Marchman Act (Chapter 397 of the Florida Statutes).

15. Upon his arrival at the jail during the evening of May 28, 2001, Mr. Zimmer was ambulatory and responsive.

16. Mr. Zimmer was placed in a holding cell designated for Marchman Act

placements.

17. Medical staff, including nurses, failed to properly monitor, assess, and record Mr. Zimmer's medical condition.

18. Mr. Zimmer remained under the care of the medical staff who continually failed to properly monitor, assess, and record Mr. Zimmer's medical condition.

19. As Mr. Zimmer remained under the custody and control of PHS's medical staff, Mr. Zimmer began showing clear signs of neurological changes.

20. Although Mr. Zimmer's condition necessitated physician intervention, PHS nursing staff failed to properly contact the medical director, Dr. Larry Baker, or send Mr. Zimmer to the hospital.

21. On May 29, 2001, at 4:00 p.m., Mr. Zimmer was noted by a PHS employee as being "unable to move" and with hand tremors.

22. Although there were changes in Mr. Zimmer's neurological status, mental status, and physical condition, the nurse employees of PHS did not call the physician on call until midnight on May 29, 2001 when a nurse called Dr. Baker at home and advised the doctor of the changes in Mr. Zimmer's

condition.

23. Dr. Baker gave orders to transport Mr. Zimmer to the infirmary at the Alachua County Jail.

24. Although it was documented that Dr. Baker was at the Alachua County Department of the Jail's medical facility, Dr. Baker did not check Mr. Zimmer's status or examine him until more than thirty-six hours later at approximately 6:45 a.m. on May 31, 2001, despite the fact that Mr. Zimmer had showed signs of progressively worsening neurological deficits including but not limited slurred speech, visual hallucinations, and left-sided paralysis.

25. Mr. Zimmer's condition after he was transferred to the infirmary, continued to deteriorate. His chart reflects that he was paralyzed and had further mental status changes.

26. The nurses and other staff failed to re-contact the doctor and/or make sure Mr. Zimmer received the proper medical attention.

27. On May 31, 2001 at 6:45 a.m., Dr. Baker finally physically examined Mr. Zimmer.

28. At that time, even though Mr. Zimmer's condition continued to deteriorate,

he was unable to use his left side, and he had neurological deficits, Dr. Baker did not plan on transferring Mr. Zimmer back to the hospital until after the time under the Marchman Act expired.

29. Although documenting symptoms and medical problems that clearly demonstrated a medical emergency, PHS failed to provide any follow-up medical care or chart Mr. Zimmer's condition.

30. When Mr. Zimmer was finally transferred by ambulance to Alachua General Hospital, approximately six hours after being seen by Dr. Baker, a CT scan revealed that Mr. Zimmer had sustained an injury to his brain requiring immediate emergency neurosurgical intervention and surgery in order to save his life.

31. At all times material to this action, Mr. Zimmer was a Marchman Act detainee under the care of PHS.

32. At all times material to this action, PHS had a duty to provide Mr. Zimmer with reasonable and necessary medical care including detoxification treatment.

33. At all times material to this action, rather than carrying out this duty, PHS,

its employees, directors, and/or managers exhibited an entire want of care showing a reckless indifference to the rights of Mr. Zimmer.

34. PHS contracted and entered into an agreement with the Sheriff of Alachua County, Steven M. Oelrich, to provide reasonable and necessary medical care for persons remanded to the care, custody and control of the Alachua County Sheriff's Office Department of the Jail.

35. The contract between the Sheriff and PHS, required PHS to pay for outside medical service for any person lawfully detained who, in the opinion of their medical director, required such care.

36. At all times material to this action, if an inmate was sent to an outside facility for medical care, PHS was liable to pay up to the first Fifteen Thousand dollars ($15,000.00) in medical expenses.

37. At all times material to this action, the decision to send an inmate to an outside medical facility for treatment was the prerogative of PHS's medical director, Dr. Larry Baker.

38. At all times material to this action, PHS agreed and contracted to provide detoxification patient services and represented that it has "established

policies, procedures and protocols for medical detoxification of inmates.

39. At all times material to this action, PHS's employees failed to follow PHS's policies, procedures, and/or protocols for medical detoxification in the treatment of Mr. Zimmer.

40. At all times material to this action, PHS promised to provide a detoxification program for any individual, such as Plaintiff Thomas Zimmer, who was brought into the Alachua County Jail and showed signs of the need for such services.

41. At all times material to this action, PHS's employees failed to provide a detoxification program for Mr. Zimmer.

42. At all times material to this action, Mr. Zimmer was brought to the Alachua County Jail for detoxification services as ordered by Alachua General Hospital emergency physician, Dr. Dave Roberts.

43. During the entire time that Mr. Zimmer was at the jail from May 28, 2001 through May 31, 2001, Dr. Baker never reviewed any of Mr. Zimmer's medical records, including failing to review the records sent with Mr. Zimmer from Alachua General Hospital, as well as failing to review any of the nursing or progress notes generated from the time of Plaintiff Thomas Zimmer's arrival.

44. PHS's policies and procedures require chemically dependant detainees to be clinically managed according to an individual treatment plan developed and implemented at time of detention.

45. At all times relevant to this action, PHS's employees failed to follow PHS's policies and procedures for Mr. Zimmer.

46. PHS's policy mandated that a nurse will be available for the purpose of an intake screening twenty-four hours per day, seven days per week.

47. PHS's medical personnel failed to screen Mr. Zimmer upon his arrival at intake.

48. At all times relevant to this action, PHS's, its employees', its directors', and/or its managers' treatment and care of Mr. Zimmer fell below the prevailing standard of care.

49. At all times relevant to this action, PHS's, its employees', its directors', and/or its managers' treatment and care of Mr. Zimmer was of a gross and flagrant character, evincing reckless disregard of human life or of the safety of persons exposed to its dangerous effects.

50. At all times relevant to this action, PHS's, its employees', its directors', and/or its managers' treatment and care of Mr. Zimmer showed an entire want of care which would raise the presumption of a conscious indifference

to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of Mr. Zimmer, or that reckless indifference to his rights which is equivalent to an intentional violation of them.

51. PHS's, its employees', its directors', and/or its managers' decision to ignore substantial dangers to Plaintiff Thomas Zimmer was a deliberate business decision intended to maximize profits and showed an entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of Mr. Zimmer, or that reckless indifference to his rights which is equivalent to an intentional violation of them.

52. PHS's, its employees', its directors', and/or its managers' complete failure to take action to assist Plaintiff Thomas Zimmer and/or the decision to ignore the operation of its facility to an extent that would allow Mr. Zimmer to undergo this type of treatment and care showed an entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of Mr. Zimmer, or that reckless indifference to his

rights which is equivalent to an intentional violation of them.

53. At all times relevant to this action, Dr. Larry Baker was the Medical Director for PHS at the ACDC.

54. At all times relevant to this action, Dr. Baker was a director, manager, and/or managing agent for PHS.

55. At all times relevant to this action, PHS's nurses' treatment and care of Mr. Zimmer showed an entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of Mr. Zimmer, or that reckless indifference to his rights which is equivalent to an intentional violation of them.

56. Linda Owens, who at all times relevant was the Health Service Administrator for PHS, has stated that the treatment and care given to Mr. Zimmer was bad and that some could characterize this treatment and care as outrageous.

57. At all times relevant to this action, PHS condoned and ratified the treatment that Mr. Zimmer received and failed to take any corrective actions of any kind towards its employees, agents, directors, or managers, including Medical Director Dr. Baker, who treated Mr. Zimmer.

58. At all time relevant to this action, Dr. Larry Baker, as a PHS manager, director, and/or managing agent knowingly condoned, ratified, and/or consented to the treatment and care of Mr. Zimmer provided by PHS's nurses.

59. At all times relevant to this action, Dr. Larry Baker was a managing agent and/or held a policy making position with PHS.

60. At all times relevant to this action, Dr. Baker's treatment and care of Plaintiff Thomas Zimmer showed an entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of Mr. Zimmer, or that reckless indifference to his rights which is equivalent to an intentional violation of them.

<u>COUNT I - NEGLIGENCE OF PRISON HEALTH SERVICES, INC.</u>

The Plaintiff, Thomas Joseph Zimmer, V, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 60, and further alleges:

61. Prison Health Services, Inc. is liable for the negligent acts of any of its agents, servants, and/or employees acting within the course and scope of their agency or employment in the furtherance of Prison Health Services, Inc.'s business pursuits.

13

62. Beginning on or about May 28, 2001, Prison Health Services, Inc. had a duty individually, and by and through its agents, servants, and employees, including but not limited to its Medical Director, Larry A. Baker, D.O. and the nursing staff, acting within the course and scope of their agency and/or employment to provide timely and appropriate medical care and treatment to Mr. Zimmer in accordance with the accepted professional standards of care in Alachua County, Florida and/or any other medical community.

63. Prison Health Services, Inc. breached its duties by doing or failing to do the following, which are departures from the accepted standards of care in Alachua County, Florida, and any other similar medical community:

   A. Failed to timely recognize the critical and progressive nature of Thomas Zimmer's illness and/or injury.

   B. Failed to timely and appropriately assess Thomas Zimmer.

   C. Failed to timely obtain physician attendance to Thomas Zimmer.

   D. Failed to promptly transfer Mr. Zimmer to the hospital when a physical examination showed neurological deficits and paralysis.

   E. Failed to review Mr. Zimmer's chart and obtain a reliable medical history.

   F. Failed to properly train the nurse employees of Prison Health

>   Services, Inc. to recognize the signs and symptoms of a closed head injury and take the appropriate action.
>
> G. Failed to understand, appreciate, and/or follow established Prison Health Services' and Alachua County Sheriff's Office Department of the Jail policies, procedures, and protocols which were in existence at the time of this incident.
>
> H. Failed to provide that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar healthcare providers.

64. As a direct and proximate result of the acts and omissions of Prison Health Services, Inc., by and through its agents, servants, and employees acting within the scope and course of their agency or employment, Plaintiff, Thomas Joseph Zimmer, V, has suffered past, present and future damages as follows:

    A. Past, present and future medical expenses and care;

    B. Loss of capacity to enjoy life;

    C. Pain and suffering;

    D. Mental pain and anguish;

    E. Bodily injury and disability;

15

WHEREFORE, Plaintiff, Thomas Joseph Zimmer, V, demands judgment against Prison Health Services, Inc. for these damages and all other damages allowed by law, including punitive damages and his costs and fees incurred in bringing this action.

### COUNT III - LIABILITY FOR INJURY TO PARENT (768.0415)
### THOMAS JOSEPH ZIMMER, VI

The Plaintiff, Thomas Joseph Zimmer, VI, by and through his mother and next best friend Valerie L. Connell, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 60, and further alleges:

65. Thomas Joseph "T.J." Zimmer, VI, is the minor son of Thomas Joseph Zimmer, V.

66. As a direct and proximate result of the negligence of Defendants, Thomas Joseph "T.J." Zimmer, VI has suffered the loss of services, support, comfort, companionship and society of his father, Thomas Joseph Zimmer, V.

WHEREFORE, Plaintiff, Thomas Joseph "T.J." Zimmer, VI, by and through his mother as his natural parent, demands judgment against Prison Health Services, Inc. for these damages and all other damages allowed by law, including punitive damages and his costs and fees incurred in bringing this action.

### CONDITIONS PRECEDENT

Plaintiffs have satisfied all conditions precedent to filing suit pursuant to

Chapter 766, Florida Statutes.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial on all issues so triable.

LAW OFFICE OF RUSH & GLASSMAN


  s/ *Robert A. Rush*
ROBERT A. RUSH
Florida Bar #0559512
726 NE First Street
Gainesville, FL 32601
(352) 373-7566
(352) 376-7760  — facsimile
Robert@rushandglassman.com
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Revised Amended Complaint has been furnished, by electronic mail by the Clerk of the Court for the Northern District of Florida, to William E. Lawton, Esq., P. O. Box 2928, Orlando, FL 32802 this 18th day of June 2004.

  s/ *Robert A. Rush*
Robert A. Rush